CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 15 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHRISTINA L. KILGORE, | CASE NO. 3:07CV00001 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security[1], | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's March 9, 2005 protectively filed applications for a closed period of child's insurance benefits[2] and supplemental security income ("SSI"), 42 U.S.C. § 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this action from the docket of the court.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Jo Anne B. Barnhart, Commissioner of Social Security, as the defendant.

[2] In order to qualify for child's benefits, plaintiff must establish the existence of a disability which began prior to age twenty-two. See 42 U.S.C. § 402(d)(1). Prior to age eighteen, plaintiff received child's benefits because she met Listing 112.05D as the result of mental retardation and learning disabilities. (R. 15, 19.) Plaintiff's benefits were ceased upon redetermination at age eighteen. (R. 15.)

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff was twenty-two years old on February 11, 2003, and that she had not engaged in substantial gainful activity since her alleged disability onset date, January 1, 2002. (R. 15, 17-18.) The Law Judge determined that plaintiff's cognitive/learning disorder and psoriasis were severe impairments, yet when viewed individually or in combination, were not severe enough to meet or equal any listed impairment. (R. 18.) The Law Judge was of the view that, although plaintiff's impairments could reasonably be expected to produce the symptoms she alleged, her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible," and she retained the residual functional capacity (RFC) to perform light exertional work which consists of simple, repetitive work tasks on a sustained basis in a low stress, dust free work environment which does not require a reading level higher than sixth or seventh grade. (R. 21-22.) The Law Judge found that plaintiff's two, short-term jobs did not qualify as past relevant work under the regulations. (R. 23-24, 259.)[3] By application of the Medical-Vocational Guidelines ("grids") and by reference to testimony provided by the vocational expert (VE), the Law Judge concluded that the jobs of dishwasher, bus person, hand packer, and simple bench assembly jobs were available to plaintiff. (R. 24, 261-262.) Thus, the Law Judge concluded that she was not disabled under the Act. (R. 25-26.)

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis in the record, or in the reasons advanced on appeal, to review the Law Judge's decision. (R. 8-

---

[3]The Law Judge actually found plaintiff had not engaged in any substantial gainful activity ("SGA") because her earnings did not qualify for SGA. (R. 17-18.)

10.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

In a brief filed in support of her motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding that she did not meet the requirements of 12.02 of the Listings. (Plaintiff's Brief, pp. 5-6.) Specifically, plaintiff contends that the evidence consistently establishes that she meets 12.02, and as such, there is "no doubt" she has met her burden of proof. (Pl's Brief, p. 6.)

Under 12.02, organic mental disorders which are psychological or behavioral abnormalities associated with dysfunction of the brain are disabling as a matter of law. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. In order to qualify under 12.02, a claimant must either meet the requirements both sections A and B, or section C. Section A requires:

> Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
> 4. Change in personality; or
> 5. Disturbance in mood; or
> 6. Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impose control or;
> 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Lurai-Nebraska, Halstead-Reitan, etc.;

In order to satisfy the section B criteria, a plaintiff must demonstrate that the disorder results in *at least two of the following*:

3

> 1. Marked[4] restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.[5]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

The Law Judge found that plaintiff suffered a cognitive impairment/learning disability, evidenced by a memory impairment, sufficient to meet the section A criteria. (R. 20.) However, he concluded that plaintiff did not meet section B, as she had only mild restrictions on her activities of daily living; mild to moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and there is no evidence she has had any extending episodes of decompensation. (R. 21.) Thus, because she failed to satisfy the requirements of both sections A and B, the Law Judge found that she did not meet Listing 12.02. (*Id.*)

The undersigned finds substantial evidence to support the Law Judge's conclusion that plaintiff's impairments did not meet the requirements of 12.02B: On June 13, 2006, Barry S. Hensley performed a vocational evaluation on plaintiff. (R. 134-140.) During that evaluation,

---

[4]Under this Listing, "marked" is defined as "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). Furthermore, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately and effectively." *Id.*

[5]The regulations define decompensation as "[e]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Part 404, Subpt. P., App. 1, § 12.00(C)(4). The phrase "repeated episodes of decompensation, each of extended duration," refers to three episodes in a year, or an average of once every four months, each episode lasting for at least two weeks. *Id.*

4

plaintiff reported that her activities of daily living included surfing the internet, watching TV, visiting soap opera personality web sites, using e-mail, communicating with friends from high school, using message boards on the internet relating to soap operas, shopping with family and friends, performing light housework, reading teenage novels, visiting her aunt two to three days a week, writing in a journal, and attending church. (R. 136.)

At the request of her counsel, plaintiff was evaluated by Robert L. Muller, Ph.D. on November 2, 2005. (R. 212-214.) Dr. Muller found her to be very cooperative and was able to establish a good rapport with her. (R. 213.) Dr. Muller noted that plaintiff reported participating in the following activities of daily living: spending time with immediate family members, using the internet, e-mailing with others, watching TV, reading, doing household chores, and regularly going shopping and out to eat. (*Id.*) Dr. Muller concluded that her GAF was 55, which indicates only "moderate symptoms" or "moderate difficulty in social, occupation, or school functioning."[6] (R. 214.)

Steve Saxby, Ph.D. evaluated plaintiff's records on July 26, 2005 and submitted mental and psychiatric assessments. (R. 184-186, 187-199.) Dr. Saxby found that plaintiff could work at a consistent pace, adequately maintain concentration and attention, and had only moderate difficulties in maintaining concentration, persistence, or pace. (R. 186, 197.) He further found that her activities of daily living and her social skills were "functional," and she had no difficulty maintaining social functioning. (*Id.*) Dr. Saxby noted that plaintiff had not experienced extended episodes of decompensation, and that her mental limitations would not preclude her

---

[6]A GAF of 51-60 indicates only "moderate" symptoms or difficulties. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed 2000) (*DSM-IV*).

from meeting the basic demands of competitive work on a sustained basis. (*Id.*) Ultimately, Dr. Saxby opined that plaintiff could perform simple, routine, repetitive work in a stable environment. (R. 186.) On October 21, 2005, Yvonne Evans, Ph.D. affirmed Dr. Saxby's findings. (R. 186-187.)

In a Function Report filled out by plaintiff on July 5, 2005, she described her activities of daily living as follows: spending time with family, doing chores, watching TV, doing basic cooking, reading, writing short stories, doing puzzles, visiting her grandmother, attending church, and going to the grocery store. (R. 109-116.) Plaintiff also reported spending time on the computer surfing the internet on a daily basis, checking her e-mail, and visiting soap opera web sites. (R. 113.) Plaintiff described herself as a "quiet person," yet reported no problems getting along with others, and she stated she spends time with other people about once a week, doing such things as going to the movies, the mall, or a play. (R. 113-114.) Finally, plaintiff stated that she can pay her own bills, handle a savings account, and use a checkbook/money orders. (R. 112.)

On June 21, 2005, David Leen, Ph.D., performed psychological and mental evaluations on plaintiff. (R. 180-183.) He reported that she exhibited only "some suggestion of mild difficulty" maintaining attention during her evaluation. (R. 182.) As for daily activities, she reported doing household chores, jigsaw puzzles, watching TV, and having daily contact with extended family members. (*Id.*) Dr. Leen opined that plaintiff had a GAF of 55 and was capable of doing the following: managing her own funds; consistently performing simple, repetitive tasks in a timely and appropriate manner; completing a normal week without interruptions from cognitive impairments and/or limitations; dealing "appropriately" with co-workers and the

6

public; and handling the usual stresses encountered in competitive work. (R. 183.)

On July 29 and July 30, 2003, plaintiff received a vocational evaluation at the Woodrow Wilson Rehabilitation Center. (R. 65-71.) Plaintiff informed the evaluator that she was emotionally and physically prepared to work or receive training, but she was most interested in "starting work as soon as possible." (R. 69.) The evaluator noted that plaintiff had a high school diploma and had received one year of education at the community college (R. 65), was self-taught on the computer (R. 70), and could type 45 words per minute (R. 69). The evaluator also noted that getting a job or receiving the training necessary for a job were a priority for plaintiff, as she had the personal goal of moving out of her parents' home. (R. 70.) The evaluator opined that plaintiff possessed satisfactory interpersonal skills (R. 67), and she possessed satisfactory academics to pursue jobs she had shown an interest in pursuing (R. 70). The evaluator concluded that plaintiff had the potential for success in training for an entry into mid-level clerically oriented jobs. (R. 65.)

Robin Hawks, LPC, performed a psychological evaluation on plaintiff on April 6, 2001. (R. 145-150.) Hawks noted that plaintiff was cooperative and interacted with her appropriately. (R. 146.) Plaintiff reported to Hawks that although she is introverted, she gets along well with others, it is easy for her to ask for help from others, and she has good self-esteem. (R. 145.) Hawks opined that plaintiff's academic skills were "generally adequate for many jobs." (R. 148.)

Next, plaintiff argues that even if she does not suffer a listed impairment under Listing 12.02, her mental limitations preclude her from performing "unskilled work," as the term is defined in the Social Security Administration's (SSA) Program Operations Manual (POMS), section DI 25020.010. (Pl's Brief, pp. 6-7.) Although the POMS is entitled to deference, it

should be disregarded to the extent it conflicts with the relevant statute and regulation.[7] *Wilson v. Apfel*, 81 F.Supp.2d 649, 653 (WD Va., 2000)(citing *Bubnis v. Apfel*, 150 F.3d 177, 181 (2nd Cir. 1998)).

POMS, section DI 25020.010(3) provides that the basic mental demands of competitive, remunerative, unskilled work includes the following abilities on a sustained basis: understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting. The regulations define "unskilled work" as

> work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

The undersigned finds that there is substantial evidence to support the Law Judge's determination that plaintiff can perform unskilled work. For instance, Drs. Saxby and Evans concluded that her mental limitations would not preclude her from meeting the demands of competitive work on a sustained basis. (R. 186.) Also, the evaluator at the Woodrow Wilson Rehabilitation Center opined that plaintiff possessed "satisfactory academics" to pursue jobs she had shown interest in pursuing. (R. 70.) The evaluator further opined that plaintiff had the potential for success in training for entry into mid-level clerically oriented jobs. (R. 65.) Hawks concluded that her academic skills were "generally adequate for many jobs." (R. 148.) Finally,

---

[7]The Social Security Administration's website, www.socialsecurity.gov, provides that the POMS is intended for use by SSA employees.

Dr. Leen determined that plaintiff could consistently perform simple, repetitive tasks in a timely and appropriate manner, complete a normal workweek without interruptions from cognitive impairments and/or limitations, accept instructions from supervisors, deal "appropriately" with co-workers and the public, and handle the usual stresses encountered in competitive work. (R. 183.)

Plaintiff also contends that the Law Judge did not provide adequate reasons for finding that her testimony was " not entirely credible." (Pl's Brief, pp. 7-8.) In his report, the Law Judge initially noted that plaintiff claimed an *absolute inability to work.* (R. 22.) The Law Judge then went through the evidence of record as it related to the impact of her limitations, which as noted above, constituted substantial evidence to support a finding that plaintiff's functional limitations do not preclude her from performing substantial gainful activity. Thus, the undersigned finds that the Law Judge did not err in his evaluation of plaintiff's credibility.

Plaintiff also contends that the Law Judge erred by misstating the evidence provided by Barry S. Hensley, a vocational evaluator, and by not fully evaluating the opinion of Gerald K. Wells, the vocational expert who testified at her hearing before the Law Judge. (Pl's Brief, pp. 8-9.) Plaintiff points out that Hensley's report states that "secondary to the combination of psychological, emotional, and behavioral dynamics, Ms. Kilgore is vocationally disabled." (R. 139.) Plaintiff argues that the Law Judge did not properly weigh this opinion. (Pl's Brief, p. 8.) The undersigned disagrees. As noted above, the record contains numerous other expert opinions which contradict Hensley's conclusion.

Plaintiff also refers to the Wells' testimony at the hearing before the Law Judge and argues that the Law Judge failed to address it in his decision, an error which she argues makes

9

court review difficult. (Pl's Brief, p. 9.) The record shows that after the Law Judge offered the VE a hypothetical scenario which was representative of plaintiff's RFC, the VE concluded that there were jobs available to such a person. (R. 260-261.) Plaintiff's counsel then asked the VE to consider: "If a person were also very slow in their - - say, two or three times slower than another average worker, and required additional supervision and explanation of the job, would that further inhibit their ability to perform these jobs?" (R. 262.) The VE responded that this limitation might impact those jobs which require keeping up with coworkers, such as factory jobs. (R. 263.) The VE further stated, "But if a person couldn't keep up with the work, they just - - you know, over time - - they would have a difficult time doing any kind of work." (*Id.*)

Although the evidence reflects that plaintiff is slower than the average person, there is no medical evidence suggesting that she is "two to three times slower than another average worker," and the substantial record evidence supports a finding that she is not precluded from performing all gainful activity. As noted above, there is substantial evidence that plaintiff can perform simple, repetitive work on a sustained basis, findings included in the Law Judge's RFC.

For these reasons, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

August 15, 2007
Date